UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEX LEWIS,
# 181038
                Petitioner,

                                          CIVIL ACTION NO. 03-CV-60282-AA
v.                                       HONORABLE MARIANNE O. BATTANI

RAYMOND BOOKER,

                Respondent.
_____/

## OPINION AND ORDER DISMISSING PETITION
## FOR WRIT OF HABEAS CORPUS

      Petitioner Alex Lewis, a state prisoner currently confined at the Ryan Correctional Facility in Detroit, Michigan, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. The matter was referred to Magistrate Judge Wallace Capel, Jr. for report and recommendation pursuant to 28 U.S.C. § 636(b)(1).

      In his Report and Recommendation, Magistrate Judge Capel recommends that this Court dismiss the petition with prejudice. See Report and Recommendation ("R&R") at 21. Petitioner timely filed objections, which the Court has considered. For the reasons stated herein, the Court REJECTS Petitioner's objections, ACCEPTS the Report and Recommendation, and DISMISSES with prejudice the Petition for Writ of Habeas Corpus.

**I. BACKGROUND**

Petitioner was convicted of bank robbery and possession of a firearm during the commission of a felony in 1995, following a jury trial in Detroit Recorder's Court. He was sentenced to two years for the felony firearm charge and twenty-five to fifty years for the bank robbery. Lewis appealed the convictions, arguing *inter alia* that the trial court erred in denying his pretrial motion to suppress the lineup identifications of two eyewitnesses. Lewis argued the identifications were the fruit of an illegal arrest. The appellate court remanded the matter for an evidentiary hearing on the issue of the propriety of Petitioner's arrest and the admissibility of the lineup identification. See Appendix A, January 30, 1998 Order.

The trial court conducted a hearing in February 1999, determined the arrest was proper and denied the renewed motion to suppress the lineup evidence. At the hearing, the prosecution presented no additional testimony or evidence; it merely reasserted its arguments. Lewis again appealed. Because the appellate court determined it was "in no better position to address the propriety of [the] arrest" than it was at the time of the prior appeal, it again remanded for an evidentiary hearing to address the issues. See Appendix D, January 8, 2001 Order.

At the evidentiary hearing, the prosecution presented the testimony of one of the arresting officers, Sergeant Nichols. She testified that she had a photo of Lewis from the bank robbery surveillance as well as a mugshot of Lewis. At the conclusion of the hearing, the trial court again found probable cause for the arrest and again declined to suppress the lineup identifications. In upholding the trial court's ruling, the appellate court articulated its reasoning as follows:

2

In [New York v.] Harris, [495 U.S. 14 (1990)], the United States Supreme Court held that when the police have probable cause to arrest a suspect, the exclusionary rule does not preclude the use of a statement made by the defendant outside the home even though the statement is made after the arrest made in the home in violation of the Fourth Amendment. Harris, supra at 21.

In Harris, the police had probable cause to arrest the defendant. Id. at 15. They entered the defendant's house without a warrant or consent and arrested him. Id. at 16. Later, at the police station, the defendant signed an inculpatory statement. Id. The defendant argued that the statement made at the station should be suppressed because it resulted from the officers' violation of the Fourth Amendment when they entered defendant's home without a warrant or consent. Id. The Court noted that " '[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve.' " Id. at 17 (citations omitted). The Court declined to apply the exclusionary rule in this context finding that the Fourth Amendment was designed to protect the physical integrity of the home, not to protect statements made outside the premises when the police have probable cause to arrest the suspect. Id. The Court noted that in Payton [ v. New York, 445 U.S. 573 (1980)], it had ruled that a warrantless and consentless search of the home stemmed from the " 'overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.' " Id. The Court further held:

> Nothing in the reasoning of [Payton] suggests that an arrest in a home without a warrant but with probable cause somehow rendered unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that [the defendant] was immune from prosecution because his person was the fruit of an illegal arrest.

[Id. at 18, citing United States v. Crews, 445 U.S. 463, 474 (1980).]

Although [ ] Harris address[es] statements made at the station, the analysis applied. . .suggests that a lineup conducted at the station should be addressed in the same way. The exclusionary rule was not intended to grant criminal suspects protection for lineup identifications made outside their protected premises where the police have probable cause to arrest them for committing a crime. Applying the rationale set forth in [ ] Harris to this case, we must next determine if the police had probable cause to arrest defendant. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a

3

> man of reasonable caution in the belief that an offense has been or is being committed." People v. Champion, 452 Mich. 92, 115; 549 N.W.2d 849 (1996).
>
> Officer Nichols testified that the police obtained surveillance photographs of the perpetrator. They matched these photographs with a mugshot of defendant. Because the surveillance photographs were matched with mugshots of defendant, there was probable cause to arrest defendant for the robbery. The fact that the officers did not take the photographs with them to defendant's house does not undermine this rationale. The trial court, that had the opportunity to view defendant, also determined that the surveillance photographs "obviously match[ed] defendant's appearance." This Court gives deference to the trial court's superior ability to view the evidence and witnesses and will not disturb that court's findings unless they are clearly erroneous. People v. Marshall, 204 Mich.App 584, 587, 517 N.W.2d 554 (1994).

Appendix D, January 8, 2001 Order.

## II.  STANDARD OF REVIEW

In cases where a Magistrate Judge has submitted a Report and Recommendation and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the Report and Recommendation to which the party objects.  28 U.S.C. § 636(b)(1).

## III.  ANALYSIS

The Court observes at the outset that a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) provides that an application for a writ of habeas corpus shall not be granted with respect to any

claim that was adjudicated on the merits in state court proceedings unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In Williams v. Taylor, 529 U.S. 362, 404-05 (2000), the Supreme Court addressed § 2254. The Supreme Court clarified that the phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," refers only to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 411. See also Wiggins v. Smith, 5239 U.S. 510, 518 (2003). Consequently, a federal habeas court may not issue the writ simply because it concludes that the relevant state court decision applied clearly established federal law erroneously or incorrectly.   Rather, it is the habeas applicant's burden to show that the state court applied federal law to the facts of his case in an objectively unreasonable manner.' " Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam)) (internal citation omitted).

Finally, this Court must presume that state court factual determinations are correct.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  See Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  With these standards in mind, the Court turns to the merits of Petitioner's objections.

Lewis challenges the Magistrate Judge's recommendation that the Court find probable cause for his arrest existed.  Petitioner claims that he was arrested in his home without a warrant and in the absence of exigent circumstances, in violation of Payton v. New York, 445 U.S. 573 (1980).  Subsequent to his warrantless arrest, Petitioner was identified in a lineup.  The theory advanced in his objections, it that his identification was the attenuated fruit of the poisonous tree–-his arrest in his home without a warrant.

Petitioner's position is undermined by clearly established Federal law.  In New York v. Harris, 495 U.S. 14, 20 (1990), the Supreme Court explained:  "The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting [the defendant] in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated."  Thus, the state appellate court did not resort to an unreasonable application of clearly established Federal law when it determined that the lineup identification, which did not occur in Petitioner's home, need not be excluded, provided probable cause for Petitioner's arrest existed.

Lewis faces additional hurdles in advancing his claim because Fourth Amendment claims cannot be considered in a federal habeas corpus action, as long as

the state courts provided "an opportunity for full and fair litigation" of that claim.  Stone v. Powell, 428 U.S. 465, 494-95 (1976).  In Riley v. Gray, 674 F.2d 522, 526 (6th Cir.1982), the United States Court of Appeals for the Sixth Circuit held that, in order to determine whether a defendant has been provided a full and fair opportunity for litigation of a Fourth Amendment claim so as to preclude such claim from federal habeas corpus review, the court must consider whether "the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" as well as whether presentation of the claim was in fact frustrated because of a failure of that mechanism.  Id., (citations omitted).  In Machacek v. Hofbauer, 213 F.3d 947 (2000), the Sixth Circuit held that Michigan's mechanism for the resolution of Fourth Amendment claims is, in the abstract, clearly adequate.  Accordingly, the Court only considers whether Lewis' claim was frustrated by a breakdown in the state procedural mechanism.

Petitioner argues consideration of his Fourth Amendment claim is appropriate here because Michigan's procedural mechanism was thwarted by his appellate counsel's failure to submit key portions of the record, specifically the complaint.  According to Lewis, the complaint is a relevant source for a determination of probable cause, yet the complaint is not mentioned in either of the two evidentiary hearings.

Petitioner's claim lacks merit.  In this case, he was not arrested pursuant to a warrant.  Consequently, a magistrate never reviewed a complaint to assess whether a warrant should issue.  See Mich.Comp.Laws § 764.1a(2) (a magistrate's finding of probable cause may be based on the factual allegations, sworn testimony, or affidavit of the complainant).

Petitioner has failed to show that the state appellate court frustrated his ability to litigate his Fourth Amendment claim. He concedes that his claim was reviewed on appeal and remanded to the trial court for consideration of the issue on two occasions. Although the outcome is not to his liking, he received all the process he was due.

In the alternative, Petitioner asserts the purpose of the hearing was undermined because the state appellate court's ruling was in error and based upon unreliable facts. This argument likewise lacks merit.

The essence of Petitioner's contention, that he was denied due process because the trial court overruled his motion to suppress evidence, does not withstand scrutiny. In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir.1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id. (citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Lewis cannot salvage his claim by contesting the credibility of the prosecution's witness. He has not advanced clear and convincing evidence showing that his identification was incorrect.

In sum, the State of Michigan has provided Petitioner with the necessary

corrective procedures. Therefore, in order to secure habeas relief, Lewis must demonstrate that there was a breakdown in the state process. Here, no such showing can be made because the appellate court twice ordered review of the issue by the trial court and he has advanced neither clear nor convincing evidence that the credibility determinations were wrong. Accordingly, Lewis was given a full and fair opportunity to litigate his Fourth Amendment claim. This Court therefore concludes that the state court's treatment of this issue is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law.

The Petition for Writ of Habeas Corpus is **DISMISSED.**

**SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: February 10, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served upon Alex Lewis and Brenda E. Turner on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk